UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RANDALL G.,[1]

                           Plaintiff,                  DECISION AND ORDER

-vs-

                                              1:20-CV-1041 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

_____

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for Disability Insurance Benefits (DIB). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Aug. 2, 2021, ECF No. 13; Def.'s Mot., Dec. 29, 2021, ECF No. 15. Plaintiff asks the Court to reverse the final decision of the Commissioner or remand the matter for further administrative proceedings on the grounds that (1) the Appeals Council failed to properly evaluate new and material evidence, and (2) that "new and material evidence" submitted to this Court warrants remand. Pl. Mem. of Law, Aug. 2, 2021, ECF No. 13-1. The Commissioner disputes Plaintiff's contentions. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 13] is granted, the Commissioner's motion [ECF No. 15] is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this decision and order.

_____

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

<u>Plaintiff's Application and the Hearing Before the ALJ</u>

Plaintiff's DIB application alleged a disability onset date of April 8, 2016. Transcript ("Tr."), 217,[2] Mar. 3, 2021, ECF No. 12. In his application, Plaintiff alleged that his ability to work was limited by mood swings that he characterized as bipolar, depression, and a learning disability. Tr. 281. In September 2016, the Commissioner determined that Plaintiff was not disabled and therefore did not qualify for DIB benefits. Tr. 101. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 130. Plaintiff's request was approved, and the hearing was held via videoconference on May 24, 2019. Tr. 33.

At the hearing before the ALJ, Plaintiff appeared with counsel and an impartial vocational expert ("VE") joined by phone. Tr. 33–74. With respect to his education and work history, Plaintiff testified that he was schooled through 12th grade, with some vocational training in carpentry. Tr. 45. After that, he worked at an industrial bakery for 35 years, where his job was to "put the cold pans on the line in the morning" for pizza dough, watch the pans on the line throughout the day to ensure they don't "jam up," and then take the pans off the line at night. Tr. 48–52. In 2015, Plaintiff got upset and quit after one of his supervisors accused him of not paying attention on the job. Tr. 54. His attorney

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

asked why he did not try to find other work after quitting, and he answered that he "[c]ouldn't figure out the work, having somebody to work for." Tr. at 55.

When asked to describe the "big issue" that was preventing him from holding a full-time job, he had the following exchange with his attorney:

[ATTORNEY:] . . . [I]t looked . . . as if suddenly some memory issues started to come up more.

[PLAINTIFF:] Yeah, my memory, yeah.

[ATTORNEY:] You went to your primary last January 2018 with some concerns.

[PLAINTIFF:] Yes.

* * *

[ATTORNEY:] Can you help us understand what you were noticing? What was changing?

[PLAINTIFF:] My mood was changing.

* * *

[ATTORNEY:] In what way?

[PLAINTIFF:] Some days I'd just get angry at myself and I'd literally punch holes in my wall.

[ATTORNEY:] Some of the notes, now this is, you started going to [University of Buffalo Medical Doctors physician's group ("UBMD")] for testing and help, is that right?

[PLAINTIFF:] Yes.

[ATTORNEY:] And some of the things that you bring up was trouble remembering when you went to the store or . . .

[PLAINTIFF:] Yeah.

* * *

3

[ATTORNEY:] I think there was a note that, if you were to drive outside your town you may have trouble remembering where you are.

[PLAINTIFF:] Oh, yeah, if I went way far outside my town. If I went out like to Jamestown or Buffalo or a place like that, I wouldn't ever find my way around.

* * *

[ATTORNEY:] Okay. The notes say that your sister, Peggy, became your Power of Attorney.

[PLAINTIFF:] Yes.

[ATTORNEY:] Do you know how long that's been the case?

[PLAINTIFF:] A couple of years, I'd say.

* * *

[ATTORNEY:] Why did you feel it was important to have her be a Power of Attorney and help you?

[PLAINTIFF:] Because my memory, and I was forgetting to pay my bills and stuff.

* * *

[ATTORNEY:] . . . . [I]f you have to do that work now [at the industrial bakery], would your memory cause any trouble for you?

[PLAINTIFF:] I think it would.

[ATTORNEY:] How would it affect it?

[PLAINTIFF:] Just remembering to pull the pans off and when to put them back on and . . . keep it from jamming up, and I probably wouldn't remember to do that.

Tr. 58–61.

With respect to his activities of daily living, Plaintiff stated that he lives on his own, but that at one point his sister and her husband had to come over and help him clean his house because he "wasn't in the right mood to clean it." Tr. at 62. However, he also reported that he has "been keeping [his house] pretty clean myself now," that he walks or drives to his 95-year-old father's house every day to visit with him and fix his dinner, and that he can use the stove and oven. Tr. 62–63.

After examining Plaintiff's work history and listening to his testimony, the impartial vocational expert (VE) classified Plaintiff's past work as a Baker Helper, which was considered an "SVP of 2" or unskilled. Tr. 67; *see, e.g., Reda v. Astrue*, No. 08-CV-6589-CJS, 2010 WL 2104521, at *3 (W.D.N.Y. May 24, 2010) (quoting testimony from the vocational expert equating "SVP of 2" with unskilled work). The VE testified that an individual would be able to do the work of a Baker Helper if he or she can understand and carry out simple instructions, but would be precluded from the work if that individual "would need reminders to remain on task . . . two to three times over the course of the ordinary workday." Tr .67–68. Through questioning by Plaintiff's attorney, the VE affirmed that an individual who would be off task for more than 10% of the day would be precluded from even unskilled work. Tr. 69.

The ALJ's Decision

On July 16, 2019, the ALJ issued a decision finding that Plaintiff did not have a disability[3] under the law, and denying Plaintiff's claim for DIB benefits. Tr. 25. At step one

---

[3] Pursuant to 42 U.S.C. § 423(d)(1)(A), a "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date. Tr. 18. At step two, the ALJ determined that Plaintiff has the following severe impairments: neurocognitive disorder and depression. Tr. 18. In addition, he found that Plaintiff's medically determinable impairments of a learning disorder and alcohol use were non-severe, and that there was a lack of objective evidence to support a finding of borderline intellectual functioning as a medically determinable impairment. Tr. at 18–19. At step three, the ALJ found that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19–20. At steps two and three, the ALJ also performed the "special technique" required under 20 C.F.R. § 404.1520a for all mental impairments[5] and found that Plaintiff

---

[4] Claimants must meet the insured status requirements of the Social Security act to be eligible for DIB benefits. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130. In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

[5] When a claimant alleges a mental impairment, the Commissioner's regulations require the ALJ to apply a "special technique" at the second and third steps of the five-step evaluation process. *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011) (citing 20 C.F.R. § 404.1520a). First, the ALJ must evaluate the claimant using "Paragraph A" criteria to evaluate the claimant's pertinent symptoms, signs, and laboratory findings and determine whether he or she meets the requirements of one of the mental impairments listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1, § 12.00"). *See* 20 C.F.R. § 404.1520a(b)(1). If the claimant does have such an impairment, the ALJ must assess the claimant's limitations in four broad

had no limitations in understanding, remembering or applying information, or in adapting or managing himself; a mild limitation in interacting with others; and a moderate limitation concentrating, persisting, or maintaining pace. Tr. 19.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[6] ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand and carry out simple instructions. He can tolerate minor and infrequent changes to task . . . . [and] there should be no work in team or tandem." Tr. 20–21. Based on this RFC, on Plaintiff's age and education, and on the testimony of the impartial VE, the ALJ found at step four that Plaintiff was capable of performing his past relevant work as a baker helper with the industrial bakery. Tr. 24. Hence, the ALJ concluded that Plaintiff *is not* disabled for the purposes of DIB. Tr. 24–25.

Plaintiff sought review of the ALJ's decision by the Commissioner's Appeals Council. Tr. 345–46. While the review was pending, Plaintiff submitted a neuropsychological evaluation from UBMD Neurology dated October 18, 2019, which was a follow-up evaluation to one already in the record from June 2018. Tr. 80–84. The

---

areas of mental functioning that constitute the Paragraph B criteria: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (collectively, the "Paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3).

The ALJ must rate the degree of the claimant's limitation in each of the Paragraph B criteria using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). To satisfy the "Paragraph B" criteria, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the four criteria. App'x 1, § 12.00F(2). After rating the degree of functional limitation resulting from the claimant's mental impairment(s), the ALJ must then determine the severity of the mental impairment(s). 20 C.F.R. § 404.1520a(d).

[6] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

evaluation indicated, in part, that Plaintiff was "showing decline on [neuropsychological] testing despite only mildly worsened or stable psychiatric features." Tr. 84. The evaluation also noted a "[d]efinite decline" on several tests of language, memory, and executive functions, and indicated that his worsening state over the course of one year was suggestive of a degenerative disease. Tr. 83–84. Nevertheless, the Appeals Council found that the "additional evidence does not relate to the period at issue," and therefore did not affect the ALJ's decision that Plaintiff was not eligible for benefits. Tr. 2. The ALJ's decision thus became the "final decision" of the Commissioner.

## LEGAL STANDARD

42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision as to whether a claimant has a disability that would entitle him or her to an award of benefits. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See Tirado v. Bowen*, 842 F.2d 595 (2d Cir.1988).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence

having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal citation and quotation marks omitted). Consequently, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

DISCUSSION

In the present case, as indicated above, Plaintiff raises two related arguments for review by the Court. First, Plaintiff maintains that the Appeals Council failed to properly evaluate "new and material evidence" when it found that an October 2019 neuropsychological evaluation by UBMD was not related to the time period at issue, and

9

therefore declined to review the ALJ's decision. Pl. Mem. of Law at 12–16. Additionally, Plaintiff argues that "new and material evidence" submitted to this Court – namely, a letter dated April 3, 2020, which indicates that Plaintiff has been diagnosed with early onset Alzheimer's disease – warrants a remand of this case to the Commissioner to take additional evidence. Tr. 16–18.

*Legal Principles*

"A request for Appeals Council review of an ALJ's decision is the . . . final stage in the administrative process of adjudicating claims for benefits under the Social Security Act." *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996). 20 C.F.R. § 404.970(a)(5) provides that the Appeals Council will review new evidence in a case if the claimant submits "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). A claimant presenting additional evidence to the Appeals Council must also show good cause for his failure to present the evidence earlier in the administrative process. 20 C.F.R. § 404.970(b). Ultimately, even if the Appeals Council refuses to review the case, the new evidence becomes part of the administrative record. *Perez*, 77 F.3d at 45.

The Appeals Council's refusal to review a claimant's case does not amount to a consideration on the merits; "rather, it is merely a refusal to engage in any substantive review of her claim." *Pollard v. Halter*, 377 F.3d 183, 192 (2d Cir. 2004). As a result, "[i]f the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (citation omitted). If the claimant appeals to the district court, the court's role is

simply to "review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Perez*, 77 F.3d at 46. *See also Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014) (finding no error where the Appeals Council refused to review the ALJ's decision where new evidence "did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case"); *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (affirming the Appeals Council's refusal to review where claimant's new evidence did "not add so much as to make the ALJ's decision contrary to the weight of the evidence.").

By contrast, a claimant asking the district court to invoke 42 U.S.C. § 405(g)'s authorization to order the Commissioner to take additional evidence must satisfy the three-part showing summarized by the Second Circuit in *Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988):

> [A]n appellant must show that the proffered evidence is (1) "'new' and not merely cumulative of what is already in the record," *Szubak v. Secretary of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984), and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative, *see Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975). The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. *See Szubak*, 745 F.2d at 833; *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981). Finally, claimant must show (3) good cause for her failure to present the evidence earlier. *See Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir. 1985) (good cause shown where new diagnosis was based on recent neurological evaluation and assessment of response to medication required observation period).

*Tirado*, 842 F.2d at 597.

*Application*

After reviewing the full administrative record, including the October 2019 neuropsychological evaluation by UBMD Neurology, as well as the April 2020 letter indicating that Plaintiff has been diagnosed with early onset Alzheimer's, the Court finds sufficient cause to remand the matter to the Commissioner pursuant to sentence six of § 405(g) to take additional evidence.

In her decision denying DIB benefits, the ALJ found that Plaintiff could perform a full range of work at all exertional levels, but could only understand and carry out simple instructions. Tr. 20–21. She found that he can also tolerate only minor and infrequent changes to task, and that he should not work in team or tandem. Tr. 21. The ALJ acknowledged that Plaintiff claimed "numerous symptoms, including, irritability, concentration deficits, depressed mood, memory deficits and social withdrawal," but concluded that "the level of adaptive deficits alleged are unsupported by the medical evidence." Tr. 22. In addition to testimony indicating that Plaintiff "maintained significant daily activities, including seeing his father daily, preparing meals daily, cleaning and shopping," the ALJ cited multiple records from medical providers indicating that his mental status examinations throughout the disability period have been "grossly benign," that his symptoms improved with medication, and relate appropriately with others. Tr. 22.

With respect to Plaintiff's cognitive capacity and allegations of significant memory deficits in particular, the ALJ stated:

> mental status examinations overall note the claimant's memory as intact and he has shown good immediate recall and good recent memory . . . . Furthermore, examinations performed at the Alzheimer and Memory Disorder center consistently note no difficulties naming common objects, repeating phrases or writing sentences; although, I recognize that

12

examinations have also shown difficulties with performing serial sevens . . .
. Additionally, both the record and the claimant's testimony indicates that he
primarily struggles with paying bills, and that he is capable of managing the
majority of his activities, including taking medications, helping his father and
maintaining his home . . . . While the record indicates some memory deficits,
they are mild at best, as evidenced by the diagnosis of atypical mild
cognitive impairment with memory loss.

Tr. 22.

In making this statement, the ALJ referenced several pertinent reports in the record

from UBMD's Neurology practice and UBMD's Alzheimer's and Memory Disorder Center.

On May 1, 2018, Plaintiff was seen by Dr. Margaret Paroski, M.D. at the UBMD

Alzheimer's and Memory Disorder Center for an initial evaluation. Tr. 521–524. Dr.

Paroski indicated that Plaintiff's scores on his mental status exam were "suggestive of

dementia" and referred him to UBMD Neurology for a full neuropsychological evaluation

with the dementia battery to assess the pattern of deficits, establish his level of function,

and aide with a diagnosis. Tr. 524. Plaintiff was duly assessed at UBMD Neurology in

June 2018 by Ralph H.B. Benedict, Ph.D., who concluded that Plaintiff "most likely has

premorbid learning disability and lifelong adjustment problems related to his [learning

disability] and being bullied for cleft palate." Tr. 543. Dr. Benedict indicated that the

neurocognitive testing was not suggestive of early Alzheimer's disease, but noted that his

learning disability "confounded" a clear diagnosis. Tr. 543.

Plaintiff was seen again by Dr. Paroski at the UBMD Alzheimer's and Memory

Disorder Center in July 2018. Plaintiff reported that his memory "was about the same" as

when he had met with Dr. Paroski in May, but that he continued to have anger outbursts.

Tr. 554. Dr. Paroski diagnosed Plaintiff with a learning disability, mild cognitive impairment

with memory loss, personality change, anxiety, and depression. Tr. 557. She

13

recommended seeing him again in six months while he continued seeing his psychologist. Tr. 563. She suggested that he undergo additional neuropsychological testing after one year. Tr. 564.

Plaintiff returned to see Dr. Paroski at the UBMD Alzheimer's and Memory Disorder Center in February 2019. He reported that his "memory is overall about the same. He has good days and bad days . . . . and [f]orgets recent conversations." Tr. 633. Dr. Paroski again noted that Plaintiff was assessed as having a learning disability and mild cognitive impairment with memory loss, and recommended that he schedule his neuropsychological follow-up testing for June 2019. Tr. 636.

Plaintiff was apparently not able to schedule his neuropsychological follow-up testing until September 2019. Thus, it was not possible to produce the report from Dr. Benedict at UBMD Neurology until *after* the ALJ had rendered her decision denying Plaintiff DIB benefits. Regardless, by the time of Plaintiff's testing, he reported to Dr. Benedict that "I can't remember anything" and his memory was "getting worse." Tr. 80. Following the testing, Dr. Benedict noted that Plaintiff was showing a decline in his neuropsychological testing "despite only mildly worsened or stable psychiatric features." Tr. 84. Dr. Benedict further stated that "[t]he degree of impairment is significant" and that Plaintiff needs assistance with his activities of daily living. Tr. 84. He upgraded his diagnosis to a *major* neurocognitive disorder (as opposed to the previously diagnosed *minor* disorder), and noted that the worsening over one year was "suggestive of a progressive neurodegenerative disease." Tr. at 83. Dr. Benedict discussed Plaintiff's plans for the future with him, and both Plaintiff and his sister indicated he may need to move closer to his sister for more assistance. Tr. 84. Although the medical records

14

surrounding the diagnosis are not included in the transcript now before the Court, a letter submitted by Nurse Practitioner Francine Mistretta dated April 3, 2020, indicates that Plaintiff was diagnosed by the UBMD Neurology group with early onset Alzheimer's Disease on March 30, 2020. Tr. 76.

The new evidence from Dr. Benedict and Nurse Practitioner Mistretta clearly did not exist at the time of the ALJ's hearing in May 2019 or prior to the ALJ's decision in July 2019, and there is no question that the evidence is "new." *See Pollard*, 377 F.3d at 193. In addition, the Court finds that the new evidence is material, in that Dr. Benedict's October 2019 report indicates that Plaintiff's condition was "worsening over one year," which was suggestive of a "progressive neurodegenerative disease." Given the ALJ's acknowledgement of Plaintiff's deficits, Dr. Benedict's suggestion and Nurse Practitioner Mistretta's letter could have influenced the ALJ to decide Plaintiff's application differently. *Tirado*, 842 F.2d at 597. Finally, the ongoing nature of Plaintiff's neuropsychological evaluation and the progressive nature of the disease is good cause for his failure to present the evidence in earlier stages of the administrative proceedings. *Tolany*, 756 F.2d at 272.

Accordingly, the Court exercises its statutory authority under the sixth sentence of 42 U.S.C. § 405(g) to remand this matter to the Commissioner to take additional evidence, and "modify or affirm the [it]'s findings of fact or [it]'s decision, or both."

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 13] is granted, and the Commissioner's motion for judgment on the pleadings [ECF No. 15] is denied. This matter is remanded to the

Commissioner under the sixth sentence of 42 U.S.C. 405(g) for further proceedings consistent with this decision. SO ORDERED.

DATED:      August 9, 2022
              Rochester, New York

                        CHARLES J. SIRAGUSA
                        United States District Judge